# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ERMA RODRIGUEZ,

    Plaintiff,

v.

KENNETH R. RAMSEY, et al.,

    Defendants.

No. 03 C 3930
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Erma Rodriguez was a corrections officer employed by the Sheriff of Kane County from 1993 until her firing in 2003. She is "a female non-white Hispanic." She has filed an eleven-count complaint alleging a wide variety of legal theories of liability arising from a basic set of factual allegations.[1] She has sued many persons in her chain of command, up to and including the Sheriff, as well as the Merit Commission, the Chairman of the Kane County Board and her own union.

**Facts**

The hostile work environment and harassment was the subject of an internal written complaint which, it is alleged, was not investigated and the behavior described was not corrected. After filing on March 14, 2001, Rodriguez and the five other female employees who filed were

---

[1] Sex discrimination, race and national origin discrimination and retaliation prohibited by Title VII (Counts I-III), disparate treatment in violation of § 1981 (Count IV) denial of equal protection and deprivation of her property interest in her job and her liberty interest in her good name under the Fourteenth Amendment prohibited by § 1983 (Counts V-VII), denial of her First Amendment right prohibited by § 1983 ( Count VIII) conspiracy to violate her constitutional rights prohibited by §§ 1985, 1986 (Count IX) intentional infliction of emotional distress and assault and battery prohibited by state law (Counts X-XI).

subjected to scrutiny of their daily work and were disciplined. On April 24, the females went to the EEOC alleging discrimination and retaliation. On October 2, Rodriguez amended the EEOC charge alleging discrimination, sexual and verbal harassment and retaliation based on gender, race and national origin. On October 24, Rodriguez filed an internal complaint stating she had discovered a picture of a penis in the workplace. This too was not investigated. She was subject to harassment by the Corrections Commander Todd Exline on several occasions in October-November, 2001 and again in August 2002.

On September 16, 2002 the EEOC found reasonable cause to find discrimination against female employees at the detention center. But it did not file suit and finally, on March 10, 2003,, issued the right to sue letter.

Before the right to sue letter issued, Rodriguez observed a sexually offensive object at the workplace on January 15, 2003 and filed two internal written complaints about the object. Michael Anderson (a captain at the time) notified her shortly thereafter that she would be interviewed by an investigator regarding the charge of falsely accusing a male co-worker of displaying the object. On February 21, Rodriguez alleged that this was retaliation. The EEOC was much quicker to issue the right to sue letter this time–it did so on April 17. Meanwhile Anderson wrote a report concluding that Rodriguez had been dishonest in her accusation regarding the object and had used offensive language about her observations. He recommended she be fired. The Undersheriff, Can Schindlbeck, concurred. The Merit Commission held a lengthy hearing and terminated her.

Rodriguez sought administrative review of that decision in June of 2003. The defendants were the Merit Commission, Anderson and the Sheriff, Kenneth Ramsey. Rodriguez claimed the

termination charges were too vague to satisfy due process, the termination was against the weight of the evidence and the Merit Commission erred in failing to consider her claim that the charges were brought in retaliation for her prior complaints. She also challenged the failure of the Commission to recuse its Vice Chairman.

On February 18, 2004 Rodriguez filed two more charges with the EEOC alleging her firing was retaliation for the prior EEOC complaints and claiming her union failed to represent her or file a grievance on her behalf with respect to her firing.

Under Illinois law, an employee such as Plaintiff cannot be fired without cause. A contested decision to fire leads the Sheriff to file charges which come before an independent board – here the Sheriff's Merit Commission of Kane County, which decided to fire Plaintiff. The board's decision was subject to administrative review by the Circuit Court, which dismissed the complaint based on untimeliness. The Appellate Court reversed the decision, but ultimately that dismissal was affirmed by the Supreme Court of Illinois. *Rodriguez v. Sheriff's Merit Comm'n*, 843 N.E.2d 379 (Ill. 2006).

All of the defendants in the present case have filed motions to dismiss. There is much common ground in these motions, but I will deal with each of them in turn.

**The Kane County Board and Michael W. McCoy, Chairman of the Kane County Board**

The motion to dismiss the County is granted. The County does not set policy for the Sheriff and took no actions in this case. The County must indemnify the Sheriff and his employees, but it is not an actor in these cases. It was careless of Plaintiff's attorney to name the County as a defendant. It was even more careless to seek punitive damages, which are not

3

recoverable against a county. I will entertain a petition for reasonable fees and costs from Kane County.

The motion to dismiss the Chairman is similarly granted. No action by the Chairman is alleged, which makes sense because the Chairman has no authority to direct the operations of the Sheriff's department.

**The Union**

The Union was served with the complaint in 2006, well after the 90 days following the right to sue letter was issued with respect to the conduct which is the subject of Counts I-III. The civil rights Counts, IV-IX, and the state law claim, Count X, are all subject to two-year limitations. The conduct which is the subject of the complaint occurred about three years before service. Filing a claim (here in June of 2004) without effective service of process does not toll the statute of limitations. *See Lewellen v. Morley*, 875 F.2d 118, 119-120 (7th Cir. 1989).[2] Plaintiff could not have reasonably believed that the stay of proceedings prevented service particularly since leave to file the second amended complaint was granted during the period of the stay. Stays of litigation in District Courts are not the absolute bar against all actions that are found in the bankruptcy law. There can be no good cause for waiting nearly two years to serve the Union. Therefore, the counts against the Union are dismissed.

---

[2]There are other flaws in the claims against the Union, whose duties are, in this case, not governed by federal labor law but rather state public sector labor law. The complaint is entirely conclusory in its allegations other than its undoubtedly true assertion that the Union did not pursue grievances. This is insufficient under a legal regime that, unlike federal law, requires that violation of the duty of fair representation must be "intentional, invidious, and directed against an employee." *Murry v. AFSCME, Local 1111*, 712 N.E.2d 874, 876 (Ill. App. Ct. 1999). The state law claims are preempted by the Illinois Public Labor Relations Act and the Illinois Human Rights Act. I do not address these matters with particularity because the claims come too late in any event.

**The Individuals**

The first, and obvious, challenge to the complaint is based on the res judicata effect of the administrative hearing and the subsequent challenge to it in the state courts. If the suit here had been filed in state court, would the state court have dismissed it, in part or whole, on res judicata grounds? If so, the case cannot be brought here. *See Allen v. McCurry*, 449 U.S. 90 (1980); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). The rule precludes bringing in federal court (in civil rights cases as in any other) a matter which was or could have been raised and determined in the prior state litigation. *Durgins v. City of E. St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001); *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir. 1982).

The state court case was a final judgment. Its effect is subject to competing formalist arguments for each side. Anderson says, correctly, that dismissal for untimeliness is a final adjudication of the merits because the litigant had the chance to make its case but failed to do so. *American Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1553 (7th Cir. 1987).

In Anderson's case there is no question that he was a named defendant in the state court. In any event, he is in privity with the Sheriff, who was his employer and assigned him to investigate Rodriguez's conduct.

The state courts would deem the cause here to be within the ambit of the prior state case. Illinois follows the common transactional approach, that is, a later claim has "identity" with the earlier claim if both claims emerge from the same core of operative facts. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883 (Ill. 1998). The fact that some of the claims are based on statute or common law and others on the state or federal constitutions does not mean that they do

5

not share identity, nor does the fact that slightly different remedies might be sought. *See Davis v. City of Chicago*, 53 F.3d 801, 802 (7th Cir. 1995).

Rodriguez takes no issue with the validity of this formal analysis (at least as to Anderson, whose only role in her work was to participate in the process that led to her firing – the issue decided by the Merit Commission), but attacks the premise that state law would find the prior state proceedings to be res judicata. Illinois Supreme Court Rule 273 defines prior dismissals as an adjudication upon the merits **"other than a dismissal for lack of jurisdiction . . . ."** Rodriguez argues that the Circuit Court dismissal was for lack of jurisdiction. Indeed, in its decision in Rodriguez's case, the Supreme Court of Illinois said, "plaintiff filed her complaint for administrative review more than 35 days after the commission mailed its decision.[3] . . . Consequently, the circuit court lacked jurisdiction to hear the cause. The court should have granted the commission's motion to dismiss . . . based on lack of subject matter jurisdiction." *Rodriguez*, 843 N.E.2d at 386-87.

Courts have put some ink on paper to discuss just what is meant by "dismissal for lack of jurisdiction" in Rule 273. There are cases which find that a dismissal on grounds that time limits were not met is a basis for res judicata under Rule 273. *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199 (Ill. 1996) and *Avery v. Auto-Pro, Inc.*, 731 N.E.2d 319 (Ill. App. Ct. 2000) both state clearly that claims struck for filing outside the statute of limitations are res judicata under

---

[3]The dispute in the Appellate Court and Supreme Court was over the issue of when the clock would start running. The Merit Commission mailed its decision to Rodriguez, rather than her attorney. Rodriguez said that state law required it to be mailed to her attorney if she had an attorney of record (which she did) at the commission hearing. The Supreme Court concluded that state law (its own Rule 11) applied to motions and similar papers and not to complaints, process and decisions of the courts or commissions.

Rule 273. Illinois precedent applies this reasoning to statutes which shorten the time to sue specific governmental entities. *See Muscare v. Voltz*, 438 N.E.2d 620 (Ill. App. Ct. 1982) (suing the Chicago Transit Authority). Judge Conlon of this Court also applied Rule 273 to preclude litigation of a case effectively dismissed in state court for failing to comply with the very tight filing deadlines for challenging local liquor referendums (10 days) or contesting public measure elections (30 days). *Ross v. City of Chicago*, No. 89 C 8049, 1990 U.S. Dist. LEXIS 11144 (N.D. Ill. 1990).

The closest analysis of this issue is found in *American Nat'l Bank & Trust Co.*, 636 F. Supp. 374 (N.D. Ill. 1986). In that case, the Court noted that the zoning challenge was turned away by the state court for failure to comply with the rule requiring a filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby. The summons deadline was not met. The state court had analyzed the issue in purely nonjurisdictional terms but then referred to a "conclusion that the Circuit Court lacked jurisdiction to review the resolution of the Zoning Board . . . ." *Id.* at 377. Judge Shadur observed that Rule 273 did not include limitations dismissals among those which were not to count as res judicata and found that the off hand comment of the Appellate Court referring to the matter as jurisdictional was not meant to establish that limitations dismissals (under rules very similar to the one at issue here) are not adjudications on the merits.

On review, the Court of Appeals reiterated that well-known observation that "jurisdiction" means different things in different contexts. I think here of seeking to file a petition

for bankruptcy in state court as an act that can have no res judicata effect as opposed to missing a filing deadline which might. It summarized its review of the Illinois cases in this way:

> Illinois treats the following kinds of decisions as "on the merits" for purposes of claim preclusion: failure to comply with a special (claim specific) period of limitations; failure to comply with discovery and other pretrial orders; failure to amend the complaint in a timely fashion. It treats [other] decisions as not on the merits: filing in the wrong court; filing too soon; filing in a court without subject-matter jurisdiction; taking a premature appeal; seeking an unavailable remedy. The distinction between "come back later" or "go someplace else," on the one hand and "you're too late," on the other, is part of the fabric of Illinois law.

*American Nat'l Bank & Trust Co.*, 826 F.2d at 1553 (citations omitted).

In my view, it is wrong to read the "jurisdiction" language used by the Supreme Court of Illinois in Rodriguez's case as intended to destroy this fabric. It is like the language of the Appellate Court in *American National Bank* – a statement, not a holding. The holding and the analysis of the Supreme Court in *Rodriguez* was directed toward the meaning of its Rule 11 and the way in which that rule affects the running of the limitations clock–that was not a jurisdictional analysis. Rodriguez's Rule 273 argument fails.

In Anderson's case, the claims here (Counts IV-IX) that he was one of several defendants who wrongfully investigated, charged, and then terminated her on account of her gender, race and national origin and in retaliation for her complaints are clearly what was (or could have been) raised and adjudicated in state court. She lost in state court and cannot try again here. Since Rodriguez lost on the merits in her challenge to the termination, his actions with respect to her termination must be deemed here to be justified under state law. Therefore, she cannot sue Anderson, as she tries to do in Count X, for intentional infliction of emotional stress.

It is true that Rodriguez did not lose at a trial on the merits in a courtroom, but federal courts have found res judicata applicable where facts are determined in a formal administrative

8

hearing. There is no dispute that Merit Commissions like the one here proceed on the basis of written charges, have subpoena power and receive testimony under oath. She had the right to defend on the grounds that she was unlawfully discriminated against by the attempt to terminate her and the right to raise her due process claims. If the Commission wrongly denied her rights, its action could be corrected by filing a timely complaint for administrative review. On administrative review she had the right to join her other related civil rights claims to that complaint. *Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001).

Rodriguez's other argument is based on the Illinois doctrine which relaxes the bar against subsequent litigation when it would be unjust to apply it. It is rarely applied and seems to apply only in cases where imposing the bar would be fundamentally unfair. It speaks, in part, to the complexity of modern causes of action and pleads that a litigant may not fully understand the myriad of claims and defenses that can be mustered out of a single set of operative facts. Thus it is unfair to charge the litigant with presumed knowledge of all that could be raised and forfeit everything the litigant failed to raise. It also speaks to the degree to which the prior litigation was subject to some degree of control by Plaintiff, another way of looking at her opportunity to make her claims.

Courts are profoundly unsympathetic to this argument because it runs against strong social policy that litigation is not a blessed event and, when necessary, ought to be brought once and decided once so that the dispute is resolved. It is the purpose of courts to resolve disputes so that society and the litigants can move on.

In this case, that "equitable" argument has no equity. The complaint here was filed in the same month that the complaint for administrative review was filed–June of 2003. Rodriguez

9

might have been able to forego the state court proceeding and brought the actions here. *Button v. Harden*, 814 F.2d 382, 384 (7th Cir. 1987). The only price she would have paid for bringing her claims here without proceeding on administrative review is that she would have been bound by any factual findings made by the Merit Commission. On the papers before me, this could not have been a consideration because her complaint for administrative review was founded on the premise that the Merit Commission did not consider (or refused to consider) her claim of retaliation. So, she had a clear shot at most, if not all, of the claims made here. Instead, she chose to follow two tracks and that is precisely what the policy of res judicata is intended to prevent – piecemeal litigation.

From an equitable point of view, Rodriguez spent three or so years litigating her right to challenge the dismissal of her administrative review claim while evidence mouldered and memories faded. By seeking to preserve her state court remedies, she unduly delayed the factual resolution of her dispute against Anderson in this court. There is no particular equity on her side that would justify disregarding the rules of res judicata.

Finally, an issue is made of raising res judicata in a motion to dismiss. It is an affirmative defense but it can be considered in cases such as this, where there are no relevant facts in dispute and what happened in state court is subject to judicial notice.

Anderson's motion to dismiss is granted.

**The Sheriff and the Corrections Commander**

The termination claims against these defendants are dismissed on the same grounds I use to dismiss the case against Anderson. The portion of Count X that refers to acts which are alleged to have occurred prior to January 30, 2003 is also dismissed. The one-year statute of

might have been able to forego the state court proceeding and brought the actions here. *Button v. Harden*, 814 F.2d 382, 384 (7th Cir. 1987). The only price she would have paid for bringing her claims here without proceeding on administrative review is that she would have been bound by any factual findings made by the Merit Commission. On the papers before me, this could not have been a consideration because her complaint for administrative review was founded on the premise that the Merit Commission did not consider (or refused to consider) her claim of retaliation. So, she had a clear shot at most, if not all, of the claims made here. Instead, she chose to follow two tracks and that is precisely what the policy of res judicata is intended to prevent – piecemeal litigation.

From an equitable point of view, Rodriguez spent three or so years litigating her right to challenge the dismissal of her administrative review claim while evidence mouldered and memories faded. By seeking to preserve her state court remedies, she unduly delayed the factual resolution of her dispute against Anderson in this court. There is no particular equity on her side that would justify disregarding the rules of res judicata.

Finally, an issue is made of raising res judicata in a motion to dismiss. It is an affirmative defense but it can be considered in cases such as this, where there are no relevant facts in dispute and what happened in state court is subject to judicial notice.

Anderson's motion to dismiss is granted.

**The Sheriff and the Corrections Commander**

The termination claims against these defendants are dismissed on the same grounds I use to dismiss the case against Anderson. The portion of Count X that refers to acts which are alleged to have occurred prior to January 30, 2003 is also dismissed. The one-year statute of

limitations bars them whether filed against these persons in their official or individual capacity. *Sperandeo v. Zavitz*, 850 N.E. 2d 394 (Ill. App. Ct. 2006).

**The Merit Commission**

The claims against the Merit Commission are dismissed. For the same reasons stated with respect to Defendant Anderson, the state court proceeding forecloses any challenge to the action of the Merit Commission. Even if this were not the case, the claims against this defendant would still have to be dismissed.

The entire premise of the complaint is based on a profound misconception of the legal authority and power of a Merit Commission such as the one that terminated Rodriguez. The Commission is not her employer and does not become her employer simply because it had the power to terminate her, which power it could exercise only at the instance of her true employer, the Sheriff. The entire conspiracy count against the Commission depends on the premise that it had the power to administer or supervise the operations of the Sheriff. It does so without citing to any state law on this point. Assuming the Commission knew and believed the truth of each of the bad acts alleged by Rodriguez, it did not have the power to stop them. The state law claim for emotional distress is late in filing but it, too, is a hopeless cause. That which caused the distress was the decision which the Commission made. This tort is not much favored in Illinois law to begin with and Rodriguez has failed to cite a single case in which the decision (however wrongful) of a quasi-judicial body renders that body liable for infliction of emotional distress.

**Conclusion**

The complaint is a confusing mess based on a profound misunderstanding of the structure of non-home-rule county government, and filled with conclusory allegations in many (but not all) the counts. In order that Rodriguez might have a day in court that, but for this hope-and-a-prayer

11

pleading, she might be entitled to, I direct Plaintiff to file a third amended complaint re-alleging only those matters which are not time-barred or barred by operation of res judicata and against only those defendants who had the legal power to commit the wrongs of which she accuses them. One reason I do this is that it is difficult to tell what is left of this case in light of the consistent pattern of allegations against "the defendants" which do not specify which defendant did what in order to justify liability under the particular cause of action pled.

Defendants have filed a motion for a more definite statement of facts. While I do not share Defendants' enthusiasm for requiring such 12(c) rulings in all Title VII cases, I agree that this pleading cannot be usefully answered as it stands. As it is, the motion for a more definite statement is denied. However, had I not dismissed many of the claims and defendants I would have granted the motion. I suggest that the attorneys for Rodriguez bear this in mind when they file the third amended complaint I have ordered.

The third amended complaint is to be filed within four weeks of the date of the issuance of this order. Filing of the trimmed down complaint shall not be deemed a waiver of any claim or any claim against a defendant in the second amended complaint. If someday Rodriguez wishes to challenge my ruling on the second amended complaint she will not lose her right to do so by virtue of filing the third amended complaint I have ordered. By the same token, the remaining defendants will have the right to file further motions to dismiss with respect to any claims that are repleaded.

Defendants Kane County Sheriff's Commission, Chairman of the Kane County Board and the Kane County Board are all dismissed with prejudice. All claims related to the termination are dismissed, which includes that portion of Count III which appears to allege that termination was in retaliation for complaints. Counts VI, VII and VIII, which are founded on damages caused by

termination, along with that portion of Count X which rests on distress inflicted by termination, are similarly dismissed with prejudice. Counts IV and V against Anderson are dismissed with leave to replead, the others against Anderson are dismissed with prejudice.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 17, 2007